UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80975-Civ-ZLOCH
    (06-80061-Cr-ZLOCH)
MAGISTRATE JUDGE P. A. WHITE

NELSON BELL,                    :

        Movant,                 :

v.                              :          REPORT OF
                                        MAGISTRATE JUDGE
UNITED STATES OF AMERICA    :

        Respondent.             :
_____

Introduction

    This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his convictions and sentences for felon in possession of a firearm and possession with intent to distribute crack cocaine entered following a guilty plea in case no. 06-80061-Cr-Zloch.

    The Court has reviewed the motion (Cv-DE#1) with addendum (Cv-DE#11), the government's response (Cv-DE#9), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

    Construing the movant's claims liberally as afforded *pro se* litigants, pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant appears to raise the following claims:

> 1.   He was denied effective assistance of counsel, where his lawyer failed to file a pretrial motion to suppress prior to the movant's change of plea proceeding. (Cv-DE#1:1-2).

2.   He was denied effective assistance of counsel, where his lawyer failed to file a pretrial motion to dismiss the felon in possession of a firearm offense on the bases that: (1) it violates the *Ex Post Facto* Clause of the U.S. Constitution; and (2) the movant never possessed the firearm. (Cv-DE#1:2).

3.   He was denied effective assistance of counsel, where his lawyer failed to investigate and ascertain why the government never performed its own test to authenticate the fact that the drugs seized was actually cocaine. (Cv-DE#11:4).

4.   He was denied effective assistance of counsel, where his lawyer coerced him to plead guilty. (Cv-DE#11:4).

5.   He is actually innocent of the offense as charged in Count 1 of the Superseding Indictment. (Cv-DE#11:5).

6.   He was denied effective assistance of counsel, where his lawyer failed to challenge that one of the movant's prior state court convictions for delivery of cocaine, classified in the state forum as a misdemeanor, could not have been used as a qualifying predicate offense for purposes of enhancing his sentence as a career criminal. (Cv-DE#1:6).

<u>Procedural History</u>

The procedural history of the underlying criminal case reveals that the movant was charged by Superseding Indictment with felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1) and 18 U.S.C. §924(e) (Count 1), possession with intent to distribute at least five grams of a mixture and substance containing crack cocaine, in violation of 21 U.S.C. §841(a)(1) and 21 U.S.C.

2

§841(b)(1)(B) (Count 2), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 21 U.S.C. §924(c)(1)(A) (Count 3). (Cr-DE#26). On June 13, 2006, the government filed a notice and information pursuant to 21 U.S.C. §851, seeking an enhanced penalty based on the movant's prior convictions. (Cr-DE#27). Thereafter, defense counsel filed numerous motions, including a motion to suppress evidence (Cr-DE#37) and motion to dismiss the Superseding Indictment (Cr-DE#37). Hearings were scheduled before the court for July 2006. (Cr-DE#38).

Prior to a hearing being held on the above referenced motions, the movant entered into a negotiated written plea agreement with the government, agreeing to plead guilty to Counts 1 and 2 of the Superseding Indictment. (Cr-DE#53). The movant further agreed that the sentence would be imposed after the court considered an advisory guideline sentence, relying in part on the results of a PSI, and acknowledged that the court could depart from the guideline range. (Id.:1-2). The movant acknowledged that the court would have the discretion to impose any sentence up to the statutory maximum authorized by law for the offenses, and that the movant could not withdraw the plea as a result of the sentence imposed. (Id.:2-4). The movant also agreed to waive his right to a direct appeal pursuant to 18 U.S.C. §3742, including the right to appeal any sentence imposed, any restitution order, and the manner in which the sentence was determined, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range the court establishes at sentencing. (Id.:6-7).

In exchange, the government agreed to withdraw §851 Information and seek dismissal of Count 3 at the time of sentencing. (Cr-DE#53:1-2). The government further agreed to

3

recommend up to a three level reduction in the movant's base offense level based on his timely acceptance of responsibility. (<u>Id</u>.:2). The government and the movant agreed, although not binding on the probation officer or the court, that they would jointly recommend that: (1) the court impose a guideline range based on the parties' stipulations as contained in the written plea agreement; (2) pursuant to U.S.S.G. §2D1.1, the quantity of crack cocaine involved in the offense is 8.71 grams; (3) the movant qualifies as a career offender and armed career criminal pursuant to U.S.S.G. §4B1.1(b); (4) after adjusting the guideline range for acceptance of responsibility, the movant's adjusted base offense level would be a level 31, with a criminal history category VI, resulting in a tern if 188 to 235 months imprisonment; and, (4) the movant agrees to be sentenced to a high-end guideline range, to a term of 235 months in prison. (<u>Id</u>.:3).

Prior to sentencing, a PSI was prepared which determined that the movant was subject to an enhanced sentence as armed career criminal pursuant to U.S.S.G. §4B1.4(b)(3)(B). (PSI ¶23). Thus, the base offense level was set at a level 34, which was then reduced three levels based on acceptance of responsibility, resulting in a total adjusted base offense level 31. (PSI ¶¶24-26). The probation officer also determined that the movant had a total of 31 criminal history points, resulting in a criminal history category VI. (PSI ¶¶66-67). The criminal history points, however, were of no import, as the movant was determined to be an armed career criminal, which results in a criminal history category VI, pursuant to U.S.S.G. §4B1.4(c)(2). (PSI ¶68). The probation officer further determined that the statutory minimum term as to Count 1 was 15 years, and as to Count 2, it was five years. (PSI ¶111). However, the guideline imprisonment range for a base offense level 31, with a criminal history category VI was 188 to 235 months in prison. (PSI ¶112).

On November 28, 2006, the movant was sentenced as an armed career criminal below the applicable guideline range established by the probation officer, to two concurrent terms of 180 months in prison, followed by 5 years supervised release. (Cr-DE#56). No direct appeal was filed. (Cv-DE#s1,11). This motion to vacate was timely filed less than one year later on September 17, 2007.[1] (Cv-DE#1).

## Discussion of Claims

As noted above, the movant raises multiple claims, each of which will be individually identified and treated in turn in this Report. In order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

---

[1] The motion and supporting certificate of filing are unsigned and undated. The date used for purposes of determining the filing date is the date received by the Clerk of Court. Regardless, the date of execution is of no import as the motion appears to have been timely filed.

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong <u>Strickland</u> standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). The movant claims that but for counsel's alleged deficient performance, he would not have pleaded guilty and would have proceeded to trial. (Cv-DE#11).

Moreover, review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>Rogers v. Zant</u>, 13 F.2d 384, 386 (11 Cir. 1994).

In **claim one**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to file a pretrial motion to suppress prior to the movant's change of plea proceeding. (Cv-DE#1:1-2). According to the movant, defense counsel should have argued in support of the motion that his statements were obtained in violation of his <u>Miranda</u> rights, and the officers lacked reasonable suspicion that there was a firearm inside his home. (Cv-DE#1:2). Moreover, the movant claims that counsel should have also argued in support of the suppression motion that the DEA report reflects that no DNA evidence linking the movant to the firearm was found, and therefore, no evidence to support his possession of a

firearm. (Cv-DE#11:2).

It should first be noted that the movant waived his right to contest all nonjurisdictional defects and defenses, when he entered a knowing and voluntary guilty plea. Where a criminal defendant enters a knowing, voluntary, and intelligent plea of guilty to an offense or offenses, he waives, or more accurately, forfeits all non-jurisdictional defects and defenses. See Smith v. United States, 447 F.2d 487, 488 (5th Cir. 1971), citing, Hayes v. Smith, 447 F.2d 488 (5th Cir. 1971); see also, Wilson v. United States, 962 F.2d 966 (11th Cir. 1992); United States v. Broce, 488 U.S. 563 (1989); United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000), citing, United States v. Smallwood, 920 f.2d 1231, 1240 (5th Cir. 1991). "This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." Id.  To enter into a voluntary plea, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459 (1969).

In this case, the movant understood the facts and the elements of the offenses upon which the charges rested. Moreover, by way of entering into the negotiated plea agreement, the movant was telling his lawyer not to conduct any further investigation, nor to present any legal defenses at a trial or a suppression motion that he may be entitled to as it relates to his case. In fact, the movant agreed with counsel's advice which benefitted the movant because under the terms of the negotiated plea agreement, the government withdrew its §851 information, which resulted in a more lenient

guideline sentence.[2] Under these circumstances, no deficient performance or prejudice has been established and the movant is therefore entitled to no relief on the claim.

Review of the record reveals that the movant first appeared for a change of plea proceeding in May 2006. (Cr-DE#40). At that time, the movant denied knowing that the firearm, belonging to his son, was in the house. On that basis, the court found that it could not accept the movant's plea, and set the matter over for trial.

The movant next appeared in September 2006 for a second Rule 11 proceeding after executing a negotiated written plea agreement. (Cr-DE#59). At that time, the court conducted a thorough Rule 11 proceeding. (Id.). During the change of plea hearing, the movant stated under oath[3] that he had received a copy of the Indictment, had discussed the charges with his attorney, and was fully satisfied with counsel's representation. (Id.:10-11). The court advised, and the movant acknowledged, the potential consequences of entering a guilty plea, including the waiver of his constitutional rights. (Id.:4-7,12-13,27-28). The movant denied being treated for any mental illness, and stated he was only suffering from and being treated for his HIV disease. (Id.:7-8,12-13). Although he was currently on medication, he indicated that the medication did not affect his ability to understand the nature of the Rule 11 proceeding. (Id.).

The movant also acknowledged and understood that any estimate

---

[2]Such a sound strategic decision should not be second-guessed in this collateral proceeding. United States v. Nersian, 824 F.2d 1294, 1321 (2d Cir.), cert. den'd, 484 U.S. 957 (1987).

[3]Sworn admissions carry a strong presumption of truthfulness and pose a "formidable barrier in subsequent collateral proceedings." See Blackledge v. Allison, 431 U.S. 63, 74 (1977).

by counsel or the government regarding the length of his sentence was clearly only an estimate, and that only the district court would decide the term of his imprisonment, which could include up to a maximum of life as to Count 1 and up to 40 years as to Count 2. (Id.:28-29,43-44). The movant denied that any promises, other than as set forth in the written plea agreement, were made to induce the movant to plead guilty. (Id.:41-42). The movant further acknowledged that he had approximately seven prior felony convictions. (Id.:32). When asked by the court if anyone had threatened, coerced, pressured, or otherwise intimidated him into changing his plea, the movant responded in the negative. (Id.:15-16,41-42).

When asked by the court to explain what happened on December 8, 2005, the movant testified that he went to his children's home, in Palm Beach County, and approximately ten minutes after his arrival, the home got raided by police. (Id.:13). After being questioned whether he knew the location of the drugs in the house, the movant responded that he did not. (Id.:14). A search of the movant's pocket, however, revealed crack cocaine. (Id.:14). He stated that he did intend to possess it, but did not intend to distribute the drugs, indicating that it was for personal use. (Id.13-15). Thereafter, a gun was found in his children's mother's room. (Id.:14-15). The movant acknowledged knowing that the gun was in the house, but denied ownership of the gun, and denied intending to possess the gun. (Id.14-15). After brief discussions with his attorney throughout the court of the proceedings, the movant ultimately acknowledged that the crack cocaine found in his pocket was for personal use, and indicated that there was other crack cocaine found in the house. (Id.:19-20). Regarding the firearm, the movant stated he gave the gun to his son's mother, knew the gun was in the house, and that he had access to the gun in the event he

needed it. (_Id_.:21).  As a convicted felon, the movant understood that he was not supposed to be around guns or possess guns in any manner. (_Id_.).

Moreover, the movant agreed with the government's factual proffer which revealed as follows. (_Id_.:22-26).  On December 8, 2005, West Palm Beach Police Department officers and agents executed a lawful state search warrant[4] at 3114 Greenwood Avenue in West Palm Beach, Florida. At that time, the movant was inside the residence. When asked if he had any weapons, the movant stated he had a knife. A safety search was then conducted, at which time a blue cylinder tube containing crack cocaine was seized from the movant's pocket. A search of the southwest bedroom closet, revealed a prescription bottle in the movant's name inside the pocket of a blue sweater which contained at least 8 grams of crack cocaine. Inside the same closet, officers seized a loaded Ravens Arms, .25 caliber semiautomatic pistol.[5]

The movant was thereafter transported to the police station and interviewed[6] by West Palm Beach police officers. (_Id_.). After being advised of and waiving his rights, the  movant admitted possessing the Raven Arms .25 caliber pistol. He further acknowledged that he could not own a gun because he was a convicted felon, but claimed he had the pistol to protect his family. The

---

[4]A copy of the warrant is attached to the government's response. (Cv-DE#9). The warrant was based on information from a confidential informant, and on a controlled buy at the residence. Once the warrant was executed, the agents lawfully searched anywhere drugs could reasonably be secreted, including the bomber jacket where the firearm was found.

[5]The movant agreed with the government's proffer which revealed that the firearm and ammunition were manufactured in California and Illinois, respectively, and therefore of necessity, traveled in interstate commerce prior to its seizure in West Palm Beach, Florida.

[6]The interview was tape recorded.

movant also acknowledged that he had prior felony convictions which were punishable by a term of over one year in prison.

As evidenced above, no showing has been made that the plea was anything but knowing and voluntary. Therefore, the movant's knowing and voluntary guilty plea waived all non-jurisdictional defenses, including the pursuit of the suppression motion.[7] Thus, the movant is entitled to no relief on this claim.  The movant denied being coerced, induced, or otherwise misadvised into changing his plea. The movant's post-conviction allegation that he relied upon counsel's misadvice was cured by the court's colloquy at the change of plea proceeding. Under these circumstances, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. See Strickland, supra.

To the extent the movant means to argue that there was no proof that the firearm and ammunition traveled in interstate commerce, that claim likewise fails on the merits. (Cv-DE#11:3). As narrated previously, the government's factual proffer reveals that Special Agent Jeffrey Kunz, with the Bureau of Alcohol, Tobacco, Firearms and Explosives, an expert in the area of interstate commerce regarding firearms and ammunition, would have testified that the firearm and ammunition seized in this case traveled in interstate commerce. (Cv-DE#59:24). Specifically, the firearm was manufactured in California, and the ammunition in Illinois, and therefore, of necessity traveled in interstate commerce prior to

---

[7]It should also be noted that even if counsel had pursued suppression of his post-arrest statements on the basis that at the time of his arrest, the movant was under the influence of crack cocaine or otherwise exhausted, no showing has been made that the motion would have been granted. Under these circumstances, the movant has failed to establish prejudice arising from counsel's failure to challenge the validity of the movant's arrest or his subsequent statements prior to his change of plea proceeding. He has thus also failed to establish prejudice pursuant to Strickland and is thus entitled to no relief on the claim.

11

its ultimate seizure in Palm Beach County, Florida. (Id.:24-25). The movant provides no evidence in this collateral proceeding to the contrary regarding where the firearm and ammunition were manufactured nor how they ended up in Florida. Under these circumstances, the movant's unsupported allegation that the interstate commerce nexus was an "exaggeration and fabrication" by the prosecutor in order to establish federal jurisdiction is clearly refuted by the record and must fail. (Cv-DE#11:3). Thus, no deficient performance or prejudice has been established arising from counsel's failure to pursue this nonmeritorious claim prior to the change of plea proceeding.

In **claim two**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to file a pretrial motion to dismiss the felon in possession of a firearm offense on the bases that: (1) it violates the *Ex Post Facto* Clause of the U.S. Constitution; and (2) the movant never possessed the firearm. (Cv-DE#1:2).  Again, as previously narrated in relation to claim one above, the movant waived any right to pursue dismissal of the charges once he entered into a knowing and voluntary plea. Under these circumstances, where the plea and knowing and voluntary, the movant cannot prevail on a claim arising from counsel's deficiency prior thereto. It should also be noted, however, that the claims raised herein fail on the merits.

The *Ex Post Facto* Clause "bars application of a law 'that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" Johnson v. United States, 529 U.S. 694, 699 (2000)(citation omitted). A movant "must show both that the law he challenges operates retroactively (that is applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted."

<u>Johnson</u>, <u>supra</u>. According to the movant, charging him with felon in possession of a firearm violates the *Ex Post Facto* Clause because it increases the punishment for possession of a firearm, and punishes the movant based on an act which was previously committed, to-wit; a prior felony. (Cv-DE#1:2).

The movant was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §922(g). A defendant who violates §922(g), and has been previously convicted of three or more offenses which are drug trafficking crimes or crimes of violence, is subject to a minimum prison sentence of 15 years and a maximum sentence of life. <u>See</u> 18 U.S.C. §924(e). The Eleventh Circuit has clearly ruled that §924(e) is merely a sentence enhancement provision, and does not create a separate offense. <u>United States v. Ruo</u>, 943 F.2d 1274, 1275 (11th Cir. 1991); <u>see also</u> <u>United States v . Abernathy</u>, 277 F.3d 1048, 1050 (8th Cir.), <u>cert.</u> <u>den'd</u>, 535 U.S. 1089 (2002)("Abernathy first argues his status as a recidivist with three previous violent offenses under 18 U.S.C. §924(e) should have been submitted to the jury as an element of the offense under <u>Apprendi v. New Jersey</u> . . . Abernathy's argument fails because this issue is not an element of the offense, but is a sentencing matter under <u>Almendarez-Torres</u>.[8]"). Moreover, §924(e) applies automatically, whether or not the government seeks such an enhancement. <u>United States v . Cobia</u>,41 F.3d 1473, 1475 (11th Cir. 1995).

Moreover, the Supreme Court has also made it clear that the government need not charge the fact that the movant had prior convictions in order for the enhanced penalty provision for violation of §924 to apply. <u>See</u> <u>Almendarez-Torres</u>, 527 U.S. at 226-

---

[8]<u>United States v. Almendarez-Torres</u>, 523 U.S. 224 (1998).

27. Subsequent Supreme Court cases has not repudiated this principle. See Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 524 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005). Under these circumstances, no violation of the *Ex Post Facto* Clause has been proven, and therefore, the movant is entitled to no relief on this claim.

Regarding the movant's assertion that he never possessed the firearm that was found in the residence, that claim is also devoid of merit. Under federal law, a previously convicted felon may be charged with and convicted for either actual or constructive possession of a firearm which traveled in or affected interstate or foreign commerce at some point after its manufacture. See United States v. Gonzalez, 71 F.3d 819, 834 (11th Cir. 1996), citing, United States v. Pedro, 999 F.2d 497, 500 (11th Cir. 1990). Constructive possession over a firearm requires proof that the defendant had both "the intent and the power to exercise dominion and control over the firearm." United States v. Gonzalez, 71 F.3d at 834, quoting, United States v. Smith, 591 F.2d 1105, 1107 (5th Cir. 1979). A defendant must know of the firearm's existence in order to exercise dominion and control over it. United States v. Gonzalez, 71 F.3d at 834, see also, United States v. Mieres-Borges, 919 F.2d 652, 657 (11th Cir. 1990), cert. den'd, 499 U.S. 980 (1991) (noting constructive possession requires knowing exercise or knowing power or right to exercise dominion and control). Mere presence in the area of an object or awareness of its location, however, is not sufficient to establish possession. Id.; quoting, United States v. Maspero, 496 F.2d 1354, 1359 (5th Cir. 1974); United States v. Pedro, 999 F.2d at 500-501.

In this case, the stipulated facts reveal that the movant advised police that he knew he could not possess a firearm because

14

he was a convicted felon, but nevertheless obtained the firearm for protection of his family. (Cr-DE#59:24). By the movant's own admissions, this was sufficient to establish constructive possession over the firearm. The firearm was also found in a closet which contained a prescription bottle in the movant's name, as well as, crack cocaine. Under these circumstances, any argument to the contrary must fail. He has therefore failed to establish deficient performance or prejudice arising from counsel's failure to pursue this nonmeritorious claim. He is thus entitled to no relief on this claim.

In **claim three**, the movant asserts that he was denied effective assistance of counsel, where his lawyer failed to investigate and ascertain why the government never performed its own test to authenticate the fact that the drugs seized was actually cocaine. (Cv-DE#11:4). According to the movant, an initial test performed by the Palm Beach County Sheriff's Department on the drugs seized first gave a negative result for the presence of cocaine, and then the second test merely indicated the "possible presence of cocaine." (Cv-DE#11:4).

This claim is clearly refuted by the record which reveals that the government provided defense counsel with the DEA forensic reports establishing that the substance seized was, in fact, crack cocaine. (Cr-DE#25). Moreover, at the change of plea proceeding, the movant agreed with the government's proffer of facts which established that the movant had .6 grams of crack cocaine concealed on his person. (Cr-DE#59). The movant knowing and voluntarily agreed as part of the negotiated plea agreement that he possessed at least five grams of crack cocaine. This agreement was also premised on the fact that approximately 8 grams of crack cocaine were found in the residence inside a prescription bottle bearing

the movant's name.

The movant provides no objective evidence in this collateral proceeding that the drugs seized was anything other than crack cocaine. Such a bare and conclusory allegation, unsupported by the record, is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). Thus, no deficient performance or prejudice has been established arising from counsel's failure to investigate or otherwise require the government to independently test the drugs seized. He is therefore entitled to no relief on this claim.

To the extent the movant means to argue that counsel was ineffective for failing to challenge the amount of crack cocaine involved in the offense at sentencing because the forensic laboratory reports demonstrate that the total amount of crack cocaine seized was no more than 1 gram, that claim also fails on the merits. Moreover, the quantity of drugs had no import for purposes of determining the movant's applicable guideline range because the probation officer determined pursuant to U.S.S.G. §3D1.2(c) that the offense of conviction producing the highest offense level would be used to calculate the range. (PSI ¶16). In this case, both offenses produced the same range, and thus, the probation officer indicated it would use the felon in possession offense to establish the movant's guideline range. (PSI ¶¶16-17). Moreover, although the initial adjusted offense level was established at al level 24, the quantity of drugs is also of no import for a separate and distinct reason. The movant's guideline range was set at a level 34, pursuant to U.S.S.G. §4B1.4(b)(3)(A), based on the movant's status as an armed career criminal. (PSI ¶23).

16

Therefore, even if the facts as alleged by the movant are true, and the total amount of drugs involved in the offense was under 1 gram, this is of no import to the movant's sentence which was based on his status as an armed career criminal. Thus, any objection or challenge by counsel to the weight or type of drugs involved would not have affected either the voluntariness of the movant's plea or his ultimate sentence. Under these circumstances, no prejudice has been established arising from counsel's failure to pursue this issue.

In **claim four**, the movant asserts that he was denied effective assistance of counsel, where his lawyer coerced him to plead guilty. (Cv-DE#11:4). As discussed in relation to claim one above, this claim is patently frivolous and belied by the record which clearly establishes that the movant's plea was knowing and voluntary, after thorough consultation with counsel and an extensive Rule 11 proceeding. Therefore, the movant is entitled to no relief on this claim.

In **claim five**, the movant asserts that he is actually innocent of the offense as charged in Count 1 of the Superseding Indictment. (Cv-DE#11:5).

The movant's protestations of innocence in this motion to vacate is without substantiation in the record. A habeas petitioner attempting to establish "actual innocence" must meet a high standard. Bousley v. United States, 523 U.S. 614 (1998). He must demonstrate that "in light of all the evidence, 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley, supra at 623, quoting, Schlup v. Delo, 513 U.S. 298, 327-328 (1995). The Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. Id. See also

High v. Head, 209 F.3d 1257 (11 Cir. 2000); Lee v. Kemna, 213 F.3d 1037, 1039(8 Cir.2000); Lucidore v. New York State Div. of Parole, 209 F.3d 107 (2 Cir. 2000)(citing Schlup v. Delo, 513 U.S. 298, 299, (1995); Jones v. United States,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). To be credible, a claim of actual innocence requires the petitioner to "support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. at 324. All things considered, the evidence must undermine the Court's confidence in the outcome of the trial. Id. at 316. No such showing has been made here, and in fact, the movant's protestations of innocence are refuted by the record. Under these circumstances, counsel was not ineffective for failing to pursue this nonmeritorious claim.

Moreover, the court did not lack subject matter jurisdiction over the offense. A court's power to adjudicate a federal criminal prosecution comes from 18 U.S.C. §3231, which gives federal courts original jurisdiction over "all offenses against the laws of the United States." See 18 U.S.C. §3231. Review of the Indictment reveals that the movant violated one or more federal criminal statutes, and each states an "offense against the laws of the United States," tracking the language of the statute and setting forth the essential elements of the crime. No showing has been made in this collateral proceeding that the court lacked subject matter jurisdiction. Counsel was not ineffective for failing to pursue this claim.

In **claim six**, the movant asserts that he was denied effective

assistance of counsel, where his lawyer failed to challenge at sentence that one of the movant's prior state court convictions for delivery of cocaine, which was classified in the state forum as a misdemeanor, could not be used as a predicate offense for determining his status as an armed career criminal.(Cv-DE#11:6).

Review of the PSI reveals that the probation officer determined the movant qualified as an armed career criminal pursuant to U.S.S.G. §4B1.4(a) and §4B1.4(b)(3)(A), based on his three prior felonies for crimes of violence and/or serious drug offenses. (PSI ¶23). This resulted in a total adjusted offense level 34. (PSI ¶23).

A defendant qualifies as an armed career criminal if the offense of conviction is a violation of 18 U.S.C. §924(e). See U.S.S.G. §4B1.4, App.n.1 (2006). Under 18 U.S.C. §924(e)(1), a defendant is subject to an enhanced sentence if the instant offense of conviction is a violation of 18 U.S.C. §922(g) and the defendant "has at least three prior convictions for a 'violent felony' or 'serious drug offense,' or both, committed on occasions different from one another." U.S.S.G. §4B1.4, cmt.n.1. The terms "violent felony" and "serious drug offense" are defined in 18 U.S.C. §924(e)(2).

In this case, review of the government's 851 Information (Cr-DE#27) reveals that the movant had three prior convictions for possession and/or sale of cocaine, involving convictions for second or third degree felonies, in violation of Fla.Stat. 893.13. Under Florida law, a violation of Fla.Stat. §893.13, as a second or third degree felony, carries a maximum of fifteen or five years imprisonment, respectively. See Fla.Stat. §775.082(3)(c)-(d). Moreover, the PSI reveals additional convictions which could have

also supported the enhancement. See PSI ¶¶49,52-53. Thus, there was ample evidence of record to support the movant's enhanced sentence. Even if counsel had argued against the enhancement on the basis proffered by the movant, no showing has been made in this collateral proceeding that the court would have sustained the objection. On the record before this court, there were sufficient prior convictions to support the enhancement, and therefore, counsel was not ineffective for failing to pursue this nonmeritorious claim at sentencing.

If the movant means to argue that a prior conviction in the state forum cannot be counted because it was the result of an involuntary plea, that claim also fails on her merits. No showing has been made here that the movant has successfully attacked the lawfulness of this conviction in the state forum.  The law is clear that once the movant successfully attacks in the state forum his prior state convictions used to determine his criminal history points in this case, at that time he may then seek to reopen and reduce the federal sentence. See United States v. Walker, 198 F.3d 811, 813 (11 Cir. 1999).

It is well settled that collateral attacks on prior convictions are generally prohibited in federal sentencing proceedings, and may be raised only when the conviction was obtained in violation of the defendant's right to counsel. United States v. Phillips, 120 F.3d 227, 231 (11 Cir. 1997)(citing, Custis v. United States, 511 U.S. 485 (1994)); United States v. Farris, 77 F.3d 391, 397 & n. 10 (11 Cir.), cert. denied, 519 U.S. 896 (1996). Moreover, the Supreme Court has held that a federal prisoner who has failed to pursue available remedies to challenge a prior conviction (or has done so unsuccessfully) may not collaterally attack that conviction through a motion pursuant to 28 U.S.C. §2255

directed at the enhanced federal sentence. <u>Daniels v. United States</u>, 523 U.S. 374 (2001), <u>citing</u>, <u>Custis v. United States</u>, 511 U.S. 485, 493 (1994)(only prior convictions which may be collaterally attacked at sentencing were those obtained in violation of the right to appointed counsel).

The movant does not assert that he was not represented by counsel, but merely attempts to challenge the voluntariness of the plea entered as to the possession of cocaine offense entered in the state forum. The movant has also not shown that the prior conviction he is challenging in this proceeding has been vacated, and there is nothing of record to support such a conclusion. Thus, there appears to have been no legal basis to challenge the validity of underlying state conviction at the time of the movant's sentencing in federal court, nor at this time. Under these circumstances, no deficient performance or prejudice has been demonstrated arising from counsel's failure to pursue the claim at sentencing or on appeal.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. <u>See</u> <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir. 1989), <u>citing</u>, <u>Guerra v. United States</u>, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

<u>Conclusion</u>

It is therefore recommended that this motion to vacate

21

sentence be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 23rd day of May, 2008.

_____

UNITED STATES MAGISTRATE JUDGE

cc:  Nelson Bell, <u>Pro Se</u>
     Reg. No. 75544-004
     U.S.P.-Terre Haute
     P.O. Box 33
     Terre Haute, IN 47801

     John C. McMillan, Jr., AUSA
     U.S. Attorney's Office
     500 Australian Avenue, Suite 400
     West Palm Beach, FL 33401